UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ANTHONY EUGENE POWER,                )
                                     )
        *Plaintiff*,                 )
                                     )
                                     )
v.                                   )        No. 1:16-cv-425-SKL
                                     )
                                     )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
        *Defendant*.                 )

## MEMORANDUM AND ORDER

Plaintiff Anthony Eugene Power ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Docs. 16 & 18] and filed supporting briefs [Docs. 17 & 19]. This matter is now ripe. For the reasons stated below, (1) Plaintiff's motion for summary judgment [Doc. 16] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 18] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his applications for DIB and SSI on November 19, 2012 [Doc. 10 ("Tr.") at Page ID # 70], alleging disability beginning September 19, 2011 (Tr. 280-92). Plaintiff's claim was denied initially and upon reconsideration at the agency level. After a hearing was held on June 3, 2015, the administrative law judge ("ALJ") found on July 28, 2015, that Plaintiff was not

under a disability as defined in the Social Security Act (Tr. 17-44). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). Plaintiff timely filed the instant action [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born November 23, 1980, which made him a "younger individual," on the alleged onset date (Tr. 37, 280). Plaintiff has at least a high school education and is able to communicate in English (Tr. 37). Plaintiff's past relevant work—cashier and sales representative of toys and games—was all performed at the light exertional level, with specific vocational preparation levels ranging from three to five (Tr. 36-37).

### B.     Medical Records

In his Disability Report, Plaintiff alleged disability due to severe depression and partial paralysis on his left side (Tr. 308). Plaintiff [Doc. 17 at Page ID # 880-85] and the ALJ (Tr. 27-30) each set forth a detailed, factual recitation with regard to Plaintiff's medical record, vocational record, and the hearing testimony. Defendant generally adopts the statement of facts set forth by the ALJ, but includes extensive citation to the record throughout her argument [Doc. 19 at Page ID # 906, 908-25]. While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C.     Hearing Testimony

A hearing occurred on June 3, 2015, at which Plaintiff and a vocational expert ("VE") testified (Tr. 45-81). The Court has carefully reviewed the transcript of the testimony.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B.     The ALJ's Findings

The ALJ found that Plaintiff meets the insured status requirements through March 31, 2016 (Tr. 22). At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, September 19, 2011 (Tr. 22). At step two, the ALJ found Plaintiff had the following severe impairments: obesity, partial paralysis of the left arm and leg status-post cerebral vascular accident at birth, schizoaffective disorder, episodic mood disorder not otherwise specified, bipolar II disorder, and cannabis abuse unspecified (Tr. 22). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving lifting/carrying twenty pounds occasionally and ten pounds frequently with his dominant right upper extremity and his non-dominant left upper extremity can be used as an assist. In an eight-hour day, the claimant can sit for six hours, and he can stand and/or walk for four hours. He can never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps, climb stairs, stoop, crouch, kneel, balance, and crawl. He can occasionally push or pull with his left lower extremity and left upper extremity, which is the

non-dominant upper extremity. He can occasionally reach with his left upper extremity. He can occasionally handle and frequently finger with his left upper extremity. He must avoid concentrated exposure to hazards. He can perform simple, routine, and repetitive tasks in a low stress job, which is defined as having only occasional changes in the work setting and only occasional decision making required. He can have occasional interaction with supervisors and co-workers.

(Tr. 26). At step four, the ALJ found Plaintiff was unable to perform any past relevant work (Tr. 36-37). At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy (Tr. 37-39). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the ALJ's decision (Tr. 39).

## IV.    ANALYSIS

Plaintiff asserts this matter should be reversed and/or remanded under sentence four for several reasons: (1) the "physical [RFC] as established by the [ALJ] is not supported by substantial evidence," (2) the ALJ's decision that Plaintiff "does not meet Listing of Impairment 12.04 is not supported by substantial evidence and [is] clearly erroneous," (3) the "hypothetical questions posed to the [VE] did not accurately portray [Plaintiff's] physical and mental impairments and requires a remand," (4) the ALJ "failed to develop the record with regard to [Plaintiff's] personality disorder and the effect of the personality disorder" on Plaintiff's RFC, and (5) the ALJ "made conclusions th[a]t could only have been made by a medical expert thereby depriving [Plaintiff] of his due process rights." [Doc. 17 at Page ID # 886, 889, 893, 896, 898]. As the Commissioner does in her brief, the Court will address Plaintiff's arguments in the order in which they arise in the sequential process, rather than in the order presented by Plaintiff. Therefore, the Court will first address the issue of whether the ALJ "failed to develop the record" with regard to Plaintiff's

personality disorder (Plaintiff's fourth issue). Next, the Court will address Plaintiff's arguments concerning Listing 12.04 (Plaintiff's second issue). The Court will then address Plaintiff's arguments concerning his RFC, including whether the physical RFC is supported by substantial evidence and whether the ALJ's questions to the VE accurately portrayed Plaintiff's impairments (Plaintiff's first and third issues). Last, the Court will address Plaintiff's argument that the ALJ impermissibly made medical conclusions (Plaintiff's fifth issue).

### A.    Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (Citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.      The Record Concerning Plaintiff's Personality Disorder**

Plaintiff argues that "there was compelling and significant evidence" that Plaintiff suffers from a personality disorder, and, he argues, the Commissioner committed reversible error by not ordering an additional consultative exam concerning the personality disorder because "[a]t the time of the hearing there was inadequate testing to ascertain the nature and extent of the personality disorder, whether or not the personality disorder meets Listing of Impairment 12.08, and the effect of the personality disorder" on Plaintiff's RFC [Doc. 17 at Page ID # 897].  The Commissioner contends that "the ALJ properly developed the record with respect to Plaintiff's personality disorder, and further development was not required." [Doc. 19 at Page ID # 909].  The Court agrees with the Commissioner.

Although an ALJ "has a basic obligation to develop a full and fair record," the ALJ "is not required to act as the claimant's counsel or produce evidence for the claimant." *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-CV-109, 2013 WL 4014715, at *13 (E.D. Tenn. Aug. 6, 2013) *(citing Born v. Sec'y of Health & Human Servs.,* 923 F.2d 1168, 1172 (6th Cir.1990); *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir.1986)).  Further, because here Plaintiff was represented by counsel, "[t]he ALJ was entitled to assume that Plaintiff . . . was presenting her best evidence in favor of benefits." *Birdwell v. Barnhart*, No. 2:06-0063, 2008 WL 2414828, at *10 (M.D. Tenn. June 12, 2008) (citing *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 549 (6th Cir.2002); *Glen v. Sec'y of Health & Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)).  Moreover, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Brooks v. Astrue*, No. 3:09-CV-432, 2011 WL 652839, at *8 (E.D. Tenn. Jan. 26, 2011), *report and recommendation adopted*, No. 3:09-CV-432, 2011 WL 652837 (E.D.

Tenn. Feb. 14, 2011) (quoting *Foster*, 279 F.3d at 355) (internal quotation marks omitted).

The ALJ specifically noted that Plaintiff was diagnosed with a "schizotypal personality disorder" by Arthur Stair, III, M.A., LPE, in April 2010, prior to his alleged onset date (Tr. 28). The ALJ also noted that, on February 20, 2015, Plaintiff underwent a psychological examination with Todd Wiggins, M.A., and Mr. Wiggins found that Plaintiff "has severe schizoaffective disorder of the depressive type (by history), generalized anxiety disorder (GAD), and other specified personality disorder with dependent, obsessive-compulsive and borderline features (Exhibit 12F)." (Tr. 30).

Additionally, the State agency consultants, George Livingston, Ph.D., and P. Jeffrey Wright, Ph.D., both found that Plaintiff had a medically determinable "Personality Disorder" impairment (Tr. 111, 135) but nevertheless found that Plaintiff did not meet the requirements for Listing 12.08 (which covers personality disorders), concluding that Plaintiff was only moderately limited in his ability to maintain attention and concentration for extended periods, interact appropriately with the general public, understand and remember detailed instructions, and respond appropriately to changes in the work setting, and not significantly limited in any other functional ability (Tr. 116-18; 140-42). Dr. Livingston and Dr. Wright also both stated that further consultative exams were not necessary (Tr. 110, 134).

The ALJ assigned the consultative examiners' opinions "some weight," noting that Plaintiff's subjective complaints and the additional medical evidence received after the hearing caused her to find greater restrictions (Tr. 35). The ALJ assigned "little weight," but not no weight, to the opinions of Mr. Stair and Mr. Wiggins (Tr. 35-36). Mr. Stair opined that Plaintiff's "social relationships are at least moderately impaired," but not markedly impaired, considering Plaintiff's

"bipolar II disorder and schizotypal personality disorder." (Tr. 421). The ALJ discounted Mr. Stair's opinion because it was "too remote in time to be representative of Plaintiff's current functional limitations," although the Court notes that Mr. Stair did not opine to any significant restrictions and ultimately concluded that Plaintiff was "fully capable of understanding simple information or directions with the ability to put it to full use in a vocational setting." (Tr. 35, 421).

Mr. Wiggins diagnosed Plaintiff with "Other Specified Personality Disorder, with Dependent, Obsessive-Compulsive and Borderline features" (Tr. 777). Mr. Wiggins opined that Plaintiff was markedly limited in his ability to "maintain attention and concentration for extended periods," to "perform activities within a schedule," to "complete a normal workday and workweek without interruptions from psychologically based symptoms," to "accept instructions and respond appropriately to criticisms from supervisors," to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," to "maintain socially appropriate behavior and to adhere basic standards of neatness and cleanliness," and to "set realistic goals or make plans independently of others." (Tr. 812-13). Finally, he opined that Plaintiff was not capable of full-time work or managing his benefits (Tr. 814).

The ALJ discussed Mr. Wiggins's opinion in detail, finding it was "extreme and not supported by any objective medical evidence of record," further noting that Mr. Wiggins:

> apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. The same is true for his February 2015 opinion (Exhibit 12F). These opinions are also inconsistent with the claimant's admitted activities of daily living that have already been described above in this

decision.[1]  Mr. Wiggins merely checked off boxes on a form and did not provide a narrative report containing specific clinical findings, rather he directed me to reference his February 2015 evaluation (Exhibits 12F, 13F, and 14F).  His opinions are without substantial support from the other evidence of record, which obviously renders them less persuasive, and Mr. Wiggins is not a Ph.D. or Psy D. Finally, Mr. Wiggins opined that the claimant was unable to engage in full-time work (Exhibits 12F, 14F).  While I note that an opinion on whether an individual is disabled goes to an issue reserved to the Commissioner and therefore cannot be given special significance, such opinion should still be considered in the assessment of the claimant's [RFC] (20 CFR 404.1527(e) and 416.927(e); SSR 96-5p).  Therefore, these opinions are assigned little weight (Exhibits 12F, 14F).

(Tr. 35-36).

---

[1] Regarding Plaintiff's daily activities, the ALJ wrote:

The claimant has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations.  On his March 14, 2013, Function Report, the claimant stated that his typical day consisted of waking up, taking medication, watching television, washing the laundry, making a sandwich or Hot Pocket, watching more television, and taking his evening medications (Exhibit 4E).  Additionally, he admitted being able to perform light housework, although he indicated that it took him the entire day to complete this work because he had to perform it in small sessions.  Nevertheless, he endorsed that he had a driver's license, and he shopped for grocery and household items once a week.  Furthermore, he stated that he visited with his nine-year-old daughter every other weekend, he visited with his brother once per week, and he sometimes attended church (Exhibit 4E).  In addition, he indicated that he watched YouTube videos, played video games, and used the computer. Recently, the claimant admitted to helping his friends fix-up their home, and he reported that he was staying busy (Exhibit 13F).  The claimant's ability to perform this wide range of activities of daily living tends to indicate that his allegations of debilitating symptoms are not as severe as alleged and undermines his credibility.

(Tr. 31).

In sum, there was ample evidence in the record concerning Plaintiff's personality disorder, and opinions from several sources concerning the extent of Plaintiff's limitations arising as a result of his personality disorder, all of which the ALJ considered and evaluated in her decision. Plaintiff's argument that the ALJ's decision should be reversed or remanded for further development of the record concerning his personality disorder is therefore without merit. *See, e.g.*, *Culp v. Comm'r of Soc. Sec.*, 529 Fed. App'x 750, 751 (6th Cir. 2013) ("Given that the record contained a consideration amount of evidence pertaining to Culp's mental limitations and that Dr. Douglass had completed a mental RFC assessment . . ., the ALJ did not abuse her discretion by declining to obtain an additional assessment.") (per curiam) (citations omitted).

Moreover, the ALJ did incorporate significant mental limitations into Plaintiff's RFC, and Plaintiff fails to articulate any specific additional functional limitations arising from his personality disorder, nor does he offer any explanation for his own failure to seek out a medical opinion concerning any further limitations arising from his personality disorder prior to the administrative hearing or the ALJ's decision. The record does contain a report from William Wray, Ed.D., which Plaintiff apparently obtained about one month after the ALJ issued her decision (Tr. 816-18). Dr. Wray diagnosed Plaintiff with schizoaffective disorder (which, the Court notes, the ALJ also found was a severe impairment based on the medical records the ALJ did have at the time of her decision), and found that he was a "poor candidate for obtaining and maintaining substantial employment of any type." (Tr. 818). The Court "cannot reverse the ALJ's decision based on evidence not submitted to the ALJ." *Sutton v. Soc. Sec. Admin.*, No. 09-2288, 2011 WL 9482974, at *3 (6th Cir. Apr. 5, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (other citation omitted). Such evidence "cannot be considered part of the record for

purposes of substantial evidence review." *Foster*, 279 F.3d at 357 (citation omitted). The Court can "remand the case for further administrative proceedings in light of the evidence," but only if "a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* (citation omitted). Plaintiff does not address the standards supporting remand for new and material evidence, in particular the good cause requirement, and therefore the Court finds Plaintiff has waived any argument for a sentence-six remand. Moreover, as the Commissioner notes, the Appeals Council specifically considered Dr. Wray's report but found it "did not provide a basis for changing the [ALJ's] decision." (Tr. 2, 5).

### C.    Listing 12.04

Plaintiff also argues that the ALJ's decision that Plaintiff "does not meeting Listing of Impairment 12.04 is not supported by substantial evidence and [is] clearly erroneous." [Doc. 17 at Page ID # 889]. Plaintiff bears the burden of showing that his impairments meet or medically equal one of the listings. 20 C.F.R. § 404.1520(a)(4)(iii); *Foster*, 279 F.3d at 354.

Listing 12.04, "Affective Disorders," requires a claimant to demonstrate that the "paragraph A" criteria are satisfied, and that either the "paragraph B" or "paragraph C" are satisfied. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04. The ALJ found that Plaintiff did not satisfy the paragraph B or C criteria (Tr. 24-25). Plaintiff does not challenge the ALJ's decision with regard to the paragraph C criteria, only with regard to the paragraph B criteria [Doc. 17 at Page ID # 889-93]. The paragraph B criteria at the time of the ALJ's decision in this case[2]

---

[2] Recent revisions to the rules regarding mental impairments, effective January 17, 2017, have resulted in new paragraph B and paragraph C criteria. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732, at *661676 (Sept. 26, 2016). Because these revisions were not in effect at the time Plaintiff applied for DIB and SSI or when the ALJ rendered her decision, the Court will apply the former versions of paragraphs B and C.

required Plaintiff to demonstrate at least two of the following: 1. marked restriction of activities of daily living; 2. marked difficulties in maintaining social functioning; 3. marked difficulties in maintaining concentration, persistence, or pace; and 4. repeated episodes of decompensation, each of extended duration.

The ALJ found that Plaintiff had only mild restriction in his activities of daily living, moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence and pace (Tr. 24-25). The ALJ found that Plaintiff had no episodes of decompensation (Tr. 25). Plaintiff argues that, "[a]s a result of his multifaceted psychological issues the Claimant suffers from a *marked* restriction in maintaining social functioning and in maintaining concentration, persistence and pace." [Doc. 17 at Page ID # 892 (emphasis added)]. Plaintiff argues that these restrictions are supported by the opinions of Mr. Wiggins and Dr. Wray [*id.* at Page ID # 892-93].

While Plaintiff points to evidence that generally could support a finding of more severe restrictions that those found by the ALJ, the Court nevertheless concludes that the ALJ's decision is supported by substantial evidence. As noted above, if there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith*, 99 F.3d at 782; *Ross*, 440 F.2d at 691. Moreover, it is the function of the ALJ to resolve any conflicts between the medical opinions and other evidence in the record. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013). The ALJ gave "some weight" to the State agency mental health consultants, Dr. Wright and Dr. Livingston, who both found that Plaintiff was only moderately limited in his ability to interact with the general public, and was not significantly limited in any

14

other realm of social functioning, including in his ability to accept instructions and respond appropriately to criticism from supervisors (Tr. 117-18, 141). Plaintiff, however, testified that he was not significantly limited even in interacting with the public, admitting that when he was working he "was usually okay getting along with people," including customers (Tr. 72-73). The ALJ also specifically noted the fact that Plaintiff spends time with members of his family, including his daughter, brother and grandfather (Tr. 25), and lives with a long-term girlfriend (Tr. 24). Plaintiff did testify that he had a problem with a specific past supervisor at Bi-Lo grocery store, which the ALJ discusses in her decision, but, as the ALJ also discusses, Plaintiff had other jobs requiring him to interact with the public that he enjoyed, such as "selling video games and providing technology support to DirectTV customers." (Tr. 27).

With regard to Plaintiff's ability to maintain concentration, persistence and pace, both Dr. Livingston and Dr. Wright found that Plaintiff was not significantly limited in his ability to carry out short and simple instructions, to perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work in coordination with others, and make simple-work related decisions (Tr. 116-17, 141). They further found that Plaintiff was only moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday without interruptions from psychologically based symptoms (Tr. 116-17, 141). As stated, the ALJ gave their opinions "some weight." (Tr. 34-35). The ALJ gave good reasons for crediting these opinions (although she ultimately assigned Plaintiff somewhat greater mental restrictions), and for not crediting the opinion of Mr. Wiggins (Tr. 35). And, as discussed above, Plaintiff did not obtain an opinion from Dr. Wray until after the ALJ issued her decision; therefore, Dr. Wray's opinion

cannot be considered for purposes of substantial evidence review. *Foster*, 279 F.3d at 357.

The ALJ also specifically discussed how Plaintiff's admitted ability to play video games supports a finding of only moderate limitations in concentration, persistence and pace, because "playing video games requires the ability to be responsive to instructions in order to navigate . . . each level in order to achieve a specific goal," and because Plaintiff "did not mention any problems in following the plot or directions of the video game." (Tr. 25).

The Court finds substantial support in the record for the ALJ's finding that Plaintiff has only moderate limitations in social functioning and with regard to concentration, persistence or pace. Plaintiff does not challenge the ALJ's determination that he has no more than a mild restriction in his activities of daily living or that he has not experienced any episodes of decompensation; thus, there is substantial support for the ALJ's conclusion that Plaintiff does not meet the requirements of paragraph B of Listing 12.04. Plaintiff does not argue that he meets the requirements of paragraph C. Because a claimant must meet either the requirements of paragraph B or C, the ALJ did not err in finding Plaintiff did not qualify as disabled under Listing 12.04.

### D. The ALJ's Consideration and Determination of Plaintiff's RFC

Plaintiff also argues that the "physical [RFC] as established by the [ALJ] is not supported by substantial evidence," and that the "hypothetical questions posed to the [VE] did not accurately portray [Plaintiff's] physical and mental impairments." [Doc. 17 at Page ID # 886, 893]. The Court considers these issues together because they are both essentially challenges to the ALJ's determination of Plaintiff's RFC. In his argument concerning the hypothetical questions posed to the VE, Plaintiff does not argue that the questions posed do not reflect what the ALJ determined Plaintiff's RFC to be, rather, Plaintiff argues that "[q]uestions posed" to the VE "were based upon

16

[the] assumed residual functional capacity which is far above the Claimant's true residual functional capacity." [Doc. 17 at Page ID # 894]. Therefore, the issue here is whether there is substantial evidence in the record to support the ALJ's determination that Plaintiff is capable of a reduced range of unskilled light work, which can involve only "simple, routine, and repetitive tasks in a low stress job," defined as "having only occasional changes in the work setting" only "occasional decision making," and only "occasional interaction with supervisors and co-workers" (Tr. 26).

Regarding his physical RFC, Plaintiff argues that the ALJ erred by not crediting the opinion of Raymond Azbell, M.D., who performed a consultative examination in March 2013, and the opinion of Dr. Jerry Smith, who completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" for Plaintiff on September 30, 2015[3] [Doc. 17 at Page ID # 887-89].

First, Dr. Smith completed his assessment more than two months after the ALJ issued her decision, and more than three months after the administrative hearing. Therefore, as with Dr. Wray's opinion (discussed above), Dr. Smith's opinion "cannot be considered part of the record for substantial evidence review." *Foster*, 279 F.3d at 357 (citation omitted). The Court can "remand the case for further administrative proceedings in light of the evidence," but only "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* (citation omitted). Plaintiff does not address any good cause for her failure to obtain the evidence and present it during the prior proceeding; the Court

---

[3] Whether Dr. Smith examined Plaintiff or simply reviewed his medical records is not entirely clear. The assessment he completed states that he saw Plaintiff as a patient on September 30, 2015 (Tr. 8). However, in his brief, Plaintiff states that the "only physical assessment where the contributor actually made contact" with Plaintiff was performed by Dr. Azbell [Doc. 17 at Page ID # 888].

therefore finds that Plaintiff has waived any argument for a sentence-six remand with regard to Dr. Smith's opinion.

As for the consultative examiner, Dr. Azbell, the ALJ discussed his opinion as follows:

> On March 19, 2013, Dr. Azbell opined that the claimant can lift/carry at least ten pounds occasionally with his right hand, and probably five pounds or less, occasionally with his left hand (more likely less) (Exhibit 3F). Additionally, he opined that the claimant may be able to use his right hand frequently, not just occasionally. Based upon an eight-hour workday, Dr. Azbell opined that the claimant could sit for five to six hours [at] one time, and stand and/or walk for one to two hours at a time. He is able to do reaching and overhead reaching frequently with his right hand, and he is able to reach overhead with his left hand but cannot do so with any weight. Moreover, he is able to handle, finger, feel, push or pull with his right hand frequently, but he can do very limited handling and fingering with his left hand. Dr. Azbell went on to opine that the claimant was able to climb stairs and ramps occasionally, although a little slowly and with some difficulty. However, he cannot climb ladders or scaffolds, but he can balance and stoop occasionally, and he can kneel and crouch, but probably less than frequently. Dr. Azbell opined he should never be at unprotected heights, and he should most likely [not] work around moving mechanical parts.

> In regards to Dr. Azbell's opinion, I assign it some weight but, overall, it is not fully supported given the lack of treatment or complaints. Specifically, the claimant has dealt with his left sided partial paralysis his whole life, and he has previously worked at substantial gainful activity levels. The longitudinal evidence of record demonstrated that the claimant's allegedly disabling physical impairment was present at approximately the same level of severity prior to his alleged onset date. The fact that the impairment did not prevent the claimant from working previously strongly suggests that it would not currently prevent work. In fact, even the claimant admitted, in his Function Report, that he could lift twenty-five pounds and walk three quarters of a mile (Exhibit 4E). The consultative examiner only examined him once and never treated him. The examiner's findings were overall normal; therefore, his opinion is too broad an estimate of the claimant's restrictions or limitations.

(Tr. 34).

Plaintiff argues that the ALJ discounted Dr. Azbell's opinion solely because it was inconsistent with Plaintiff's lack of treatment, which Plaintiff argues is improper, particularly because Plaintiff's lack of treatment results from his "lack of insurance and lack of resources." [Doc. 17 at Page ID # 887-88].

The Court begins by noting that Dr. Azbell's opinion is not entitled to any special deference. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) ("[O]pinions from nontreating . . . sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability . . . .") (citations omitted). Moreover, Plaintiff mischaracterizes the ALJ's consideration of Dr. Azbell's opinion. The ALJ initially states that Dr. Azbell's restrictive opinion is not consistent with Plaintiff's lack of treatment, but the ALJ clearly goes on to list other reasons for discounting Dr. Azbell's opinion, including the fact that Dr. Azbell did not treat Plaintiff, the fact that Plaintiff admitted to having greater abilities than those found by Dr. Azbell, and the fact that Plaintiff had previously worked at substantial gainful levels despite his physical impairments (which, based on the record, had not significantly worsened since the time that Plaintiff worked) (Tr. 34).

Additionally, lack of treatment is an appropriate consideration, particularly in the evaluation of a claimant's credibility. *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996).[4]

---

[4] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates the use of the term "credibility" from SSA policy because SSA regulations do not use this term, and subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016, some eight months after the ALJ issued the decision, and

ALJs are required to consider any explanations that a claimant "may provide" for a claimant's failure to seek treatment, and in this case, the ALJ did. She considered Plaintiff's claim that he did not seek treatment for financial reasons, but found that explanation not credible in light of the fact that Plaintiff spent money on cigarettes, and because there was no proof in the record that Plaintiff had ever sought low-cost treatment (Tr. 31-32). Plaintiff argues in his brief before this Court that "there are no low income health care options for complex medical care" in Tennessee [Doc. 17 at Page ID # 887]. Plaintiff does not, however, assert that he has ever actually sought any complex care, or even basic care with any regularity, for his physical impairments, and been rejected for financial reasons. *See Moore v. Comm'r of Soc. Sec.*, No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (Where "there is no evidence that [a claimant] ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay . . .the ALJ properly looked at [the claimant's] lack of treatment as a credibility factor."). For example, Plaintiff does not assert that he saw a family doctor who recommended that he see an expensive specialist, or who found that he needed surgery or some other type of "complex" treatment that Plaintiff could not afford. It is also worth noting, as the Commissioner does, that Plaintiff was able to afford treatment for his mental health issues (Tr. 59-62, 450-750), and there is nothing in the record suggesting that Plaintiff was forced to choose treatment for his mental conditions over his physical conditions.

Ultimately, the Court finds that the ALJ's determination of Plaintiff's physical RFC is supported by substantial evidence in the form of the opinions of the State agency consultants,

---

neither party argues for its application in the case at bar. The Court will therefore consider SSR 96-7p.

Albert Heck, M.D., and Thomas Thrush, M.D.[5]  The ALJ assigned "great weight" to their opinions that Plaintiff was limited to a reduced range of light work, which is consistent with the RFC that the ALJ ultimately found for Plaintiff (Tr. 33-34).  The ALJ found that their opinions were "consistent with the claimant's longitudinal medical evidence of record and his physical examinations," and further found their opinions should be credited because they are "experts," and "are well versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act," with "considerable understanding of the Social Security disability programs and their evidentiary requirements." (Tr. 34).

As for his mental RFC, Plaintiff essentially argues that the ALJ erred by failing to incorporate all of the limitations opined to by Mr. Wiggins and Mr. Stair.  Earlier in this memorandum, the Court held that the ALJ's finding that Plaintiff has only moderate difficulties in social functioning and with regard to concentration, persistence or pace is supported by substantial evidence.  The question now is whether the RFC accommodates these limitations.

To accommodate Plaintiff's moderate difficulties in social functioning and with regard to concentration, persistence or pace, the ALJ limited Plaintiff to "simple, routine, and repetitive tasks in a low stress job, which is defined as having only occasional changes in the work setting and only occasional decision making required," with unlimited contact with the general public but only "occasional interaction with supervisors and co-workers." (Tr. 26, 33).  The Court finds this mental RFC, and therefore the hypothetical questions posed to the VE, adequately addresses all of the limitations the ALJ found credible.  This is all the ALJ was required to do.  *Parks v. Soc. Sec.*

---

[5] The Court also notes that the ALJ did not completely discount Dr. Azbell's opinion; she assigned it "some weight" in determining Plaintiff's physical RFC (Tr. 34).

*Admin*., 413 F. App'x 856, 865 (6th Cir. 2011) (citation omitted) ("Hypothetical questions . . . need only incorporate those limitations which the ALJ has accepted as credible."); *Stanley v. Sec'y of Health & Human Servs*., 39 F.3d 115, 118 (6th Cir. 1994) (citation omitted) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

Plaintiff himself testified that, when he was working, he "was usually okay getting along with people," including the public (Tr. 73). Even Mr. Wiggins, whose opinion Plaintiff greatly relies on in support of this argument, opined that Plaintiff had only moderate limitations in interacting with the public, carrying out detailed instructions, sustaining an ordinary routine without special supervision, working in coordination with others without being distracted, and making simple work-related decisions (Tr. 812-13). And Mr. Stair, the other source Plaintiff relies on in support of this argument, found that despite his mental health diagnoses, Plaintiff "appears to be fully capable of understanding simple information or directions with the ability to put it to full use in a vocational setting," with an "adequate" ability to "comprehend and implement multistep complex instructions," only a "moderate" impairment in his ability to "maintain persistence and concentration on tasks for a full workday and workweek," and only a "mild" impairment in his ability to "adapt to changes in the work place" (Tr. 421).

The Court finds that the ALJ's assessment of Plaintiff's physical and mental RFC is supported by substantial evidence in the record. Moreover, the ALJ's questions to the VE during the administrative hearing accurately reflected this RFC, and the VE testified that there are jobs available in the national economy for a person with Plaintiff's RFC (Tr. 73-80). The Court also notes that the VE testified (and the ALJ noted in her decision) that there would be jobs available to Plaintiff if his RFC was reduced even further, from frequent to only occasional fingering with

his left upper (non-dominant) extremity, and if a further mental restriction of non-production paced work was added (Tr. 38, 78-79). The ALJ's hypothetical question to the VE included the ALJ's RFC determination and the limitations based on the impairments that the ALJ found to be credible, and as a result, the VE's testimony that Plaintiff could perform jobs existing in significant numbers in the national economy is supported by substantial evidence in the record. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that [the ALJ] deemed credible."); *see also Justice*, 515 F. App'x at 588. Therefore, the Court finds Plaintiff's arguments fail in this regard.

### E. Whether the ALJ Impermissibly Made Medical Conclusions

Plaintiff's last argument, which dovetails with the RFC-related arguments the Court overruled above, is that the ALJ "rejected competent medical providers, both physical and psychological, and substituted her own opinion which is not based upon any medical evidence," which, Plaintiff argues, "mandates a remand." [Doc. 17 at Page ID # 900].

The ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record.[6] *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). She is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). The

---

[6] A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).

ALJ must determine which medical findings and opinions to credit and which to reject. *See Justice*, 515 F. App'x at 588; *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citation omitted) (In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians.").

The Court has already found that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, and will not re-state those findings here. It suffices to note that the ALJ fulfilled her responsibilities with regard to interpreting the medical findings and opinions. With regard to Plaintiff's physical limitations, the ALJ gave "some weight" to Dr. Azbell's assessment and "great weight" to the opinions of the State agency physicians (Tr. 34). Plaintiff argues that the ALJ "dismissed the bulk of" Dr. Azbell's opinion, but even a cursory review of Dr. Azbell's opinion and the ALJ's decision reveals that is not the case: (1) The ALJ incorporated significant limitations relating to the use of Plaintiff's left hand, just not to the full extent that Dr. Azbell did; (2) the ALJ agreed with Dr. Azbell that Plaintiff can sit up to six hours per day, but cannot climb ladders, ropes or scaffolds, and can only occasionally climb ramps and stairs; (3) the ALJ found that Plaintiff can stand or walk up to four hours per day, and Dr. Azbell similarly found that Plaintiff can walk for one to two hours per day, and stand for one to two hours per day (Tr. 26, 426). There are other similarities (and some differences) between the ALJ's determination of Plaintiff's RFC and Dr. Azbell's opinion, but as explained above, it is the ALJ's duty to determine the RFC, and the ALJ was permitted to consider the findings and opinions of the State agency physicians in conjunction with Dr. Azbell's records and other relevant evidence including Plaintiff's past work history, activities of daily living, and overall credibility.

The same is true for the ALJ's consideration of the medical proof concerning Plaintiff's

mental limitations, which the Court has already discussed at length in this opinion. The ALJ assigned "some weight" to the opinions of the State agency doctors (Dr. Livingston and Dr. Wright), but found that Plaintiff was more limited than they had opined based on the records the ALJ received from Mr. Wiggins and Plaintiff's subjective complaints (Tr. 35). Moreover, the ALJ assigned "little weight," but not "no weight" to the opinions of Mr. Wiggins and Mr. Stair, giving good reasons and an adequate explanation for her decision to discount both (Tr. 35-36).

The ALJ did not substitute her own medical judgment for that of Plaintiff's physicians and other healthcare providers when crafting Plaintiff's RFC in this case. The ALJ appropriately weighed the medical evidence and the opinion evidence and reached a conclusion concerning Plaintiff's abilities, which decision is supported by substantial evidence in the record. Plaintiff's motion will be denied in this regard.

In sum, the Court finds that the ALJ did not err by declining to exercise her discretion to request an additional mental consultative exam, nor did the ALJ err in determining that Plaintiff failed to meet the requirements of Listing 12.04 in light of the medical evidence which supported the ALJ's finding that the requirements of paragraph B were not met. Moreover, the ALJ's determination of Plaintiff's mental and physical RFC is supported by substantial evidence, and the question the ALJ posed to the VE accurately reflected that RFC; therefore, the Commissioner has met her burden in showing that there are jobs available to Plaintiff in the national economy. As discussed throughout this opinion, the ALJ's decision is supported by substantial evidence in the record, and the Court further concludes the ALJ applied the proper legal standards.

## V.     CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1)  Plaintiff's motion for summary judgment [Doc. 16] is **DENIED**;

2)  The Commissioner's motion for summary judgment [Doc. 18] is **GRANTED**; and

3)  The Commissioner's decision denying benefits is **AFFIRMED**.


SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE